# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| TRENT HILT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. |
| | ) | |
| ASSOCIATED WHOLESALE | ) | |
| GROCERS, INC., | ) | Judge |
| | ) | |
| Defendant. | ) | Magistrate Judge |

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I. NATURE OF THE CASE

1.     Plaintiff, Trent Hilt ("Hilt"), by counsel, brings this action against Defendant, Associated Wholesale Grocers, Inc. ("Defendant"), for violating Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000 *et. seq.,* and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").

## II. PARTIES

2.     Hilt is a resident of Davidson County, Tennessee, within the geographical boundaries of the Middle District of Tennessee.

3     Defendant is a Corporation that maintains offices and routinely conducts business within the geographical boundaries of Sumner County and the Middle District of Tennessee.

## III. JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 2617(a)(2).

5. Defendant is an "employer" as that term is defined by 42 U.S.C. §2000e(b) and 29 U.S.C. § 2611(2).

6. Hilt was an "employee," as that term is defined by 29 U.S.C. §630(f) and 29 U.S.C. § 2611(3) as well as an "eligible employee" as that term is defined by and 29 U.S.C. § 2611(2).

7. Hilt satisfied his obligation to exhaust his administrative remedies by timely filing a Charge of Discrimination (Charge No. 494-2023-03812) with the U.S. Equal Employment Opportunity Commission ("EEOC") against the Defendant alleging discrimination based on his race. Hilt received the required Notice of his Right to Sue on December 10, 2025, and timely files this action.

8. A substantial part of the events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Middle District of Tennessee; thus, the venue is proper in this Court.

IV. **FACTUAL ALLEGATIONS**

9. Hilt is African American.

10. Hilt began working for Defendant on or about December 1, 2022, as an Order Selector and was later transferred to a Loader position. At all relevant times, Hilt met or exceeded the Defendants' legitimate performance expectations.

11. Beginning in approximately October 2024, Hilt was subjected to racially disparate treatment by white supervisors including Warehouse Supervisor Jordan Harper ("Harper"), Warehouse Supervisor Keith Dubina ("Dubina"), and Warehouse Manager, Lloyd Faircloth ("Faircloth"). These supervisors would routinely assign white Loaders to Loader-only duties that allowed them to maximize production numbers and qualify for incentive pay. Hilt, however, was

2

regularly required to perform the duties of both a Loader and an Order Selector during the same shifts. This dual assignment reduced his production time and made him ineligible for the same incentives earned by white coworkers. This dual assignment continued for the rest of his employment.

12. Despite performing more work, Hilt was paid less than similarly situated white employees. Over the past year, Hilt observed that James Eden Jr., a white Loader also labeled as a "trainer," was paid $1.50 more per hour plus incentive pay, totaling around $3 per hour extra, despite not training employees. In practice, Hilt frequently assisted JR's trainees while still performing his own assignments.

13. Workstation assignments were supposed to be based on seniority. Hilt had greater seniority than at least six white Loaders. Nevertheless, those white Loaders were consistently given preferred, warmer stations, while Hilt was frequently assigned to cold freezer stations numbered 6–13.

14. On January 21, 2025, Hilt raised concerns to his supervisors and the new floor manager regarding the discriminatory pay, assignments, and seniority violations. Instead of addressing the concerns, the floor manager required Hilt to present his complaints in front of four members of management. During this meeting, warehouse manager Faircloth reacted angrily, yelling and cursing at Hilt.

15. On January 29, 2025, Hilt filed three formal HR complaints for race discrimination against Harper, Faircloth, and Dubina. On that same day, Defendant abruptly abandoned its seniority-based assignment system and replaced it with a "cup and names on paper" method that purported to randomly assign stations. In practice, white employees drew first and were allowed to repeatedly draw until they obtained the assignments they wanted, and

friends were permitted to switch assignments. Defendant later falsely claimed this method promoted fairness and that Loaders consented to it.

16. Unfortunately, also on that same day, Hilt's father passed away unexpectedly. Hilt learned this only hours after submitting his three formal complaints. Hilt informed his supervisors and managers who appeared upset that Hilt was leaving early. Hilt began leave on January 30, first using three days of bereavement leave and then sick time and vacation time. Hilt was originally told he must return to work after using his sick and vacation time or he would lose his job.

17. Only later did Defendant offer Hilt FMLA leave by providing him with the proper paperwork on February 10. Defendant's HR representatives repeatedly told Hilt that he could not take FMLA leave unless he also enrolled in Short-Term Disability leave even though that is not a requirement under the FMLA. HR further threatened Hilt with termination if he did not submit FMLA paperwork before February 25.

18. Hilt attempted to return to work on February 12, 2025, prior to the expiration of the FMLA paperwork deadline. He worked 7.1 hours before Cynthia (LNU), the Floor Manager, sent him home and told him he was not supposed to be there.

19. On February 20, 2025, Hilt's physician diagnosed him with depression and anxiety related to his circumstances, and he timely submitted FMLA paperwork. The paperwork was retroactively applied to cover his leave under the FMLA from January 30 through March 19. On March 19, 2025, Hilt received approval from his doctor to return to work on March 20.

20. Upon returning to work on March 20, 2025, Defendant required Hilt to submit to a drug test pursuant to a purported "policy" applied to employees absent more than 21 days. Hilt's white supervisor, Faircloth, instructed HR to do so. Defendant did not apply this policy to

4

white employees returning from similar or longer absences. Additionally, new hires were not tested for marijuana, and drug tests were typically only administered for workplace injuries or suspicion of impairment. Hilt tested positive for marijuana.

21. Defendant deliberately prevented his earlier return to work in order to extend his leave beyond 21 days and subject him to this drug test.

22. On March 26, 2025, Defendant terminated Hilt for his drug test result. The stated reasons were pretextual and inconsistent with how white employees were treated. Similarly situated individuals outside of Hilt' protected class were treated more favorably than Hilt. Specifically, throughout his employment, multiple non-white employees, including Derris Evans and Antonio Flores, were treated poorly compared to white employees such as Chris Crick, Kevin Kestner, and James Eden Jr., who consistently received favorable assignments and treatment.

23. Hilt's termination occurred shortly after his protected complaints of race discrimination and his exercise of FMLA rights. Defendant's stated reason for terminating Hilt's employment is retaliation based on Hilt engaging in a protected activity. Specifically, Hilt filed internal complaints about three white supervisors for racial discrimination, and Hilt took job-protected FMLA leave but was terminated upon his return to work.

24. Hilt has been damaged as a result of Defendant's actions.

## V. <u>CAUSES OF ACTION</u>

### <u>COUNT I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT - RACE DISCRIMINATION</u>

25. Hilt hereby incorporates paragraphs one (1) through twenty-four (24) of his Complaint as if the same were set forth at length herein.

26. Hilt is African American.

27.     Defendant discriminated against and subjected Hilt to differential treatment, less pay than his white co-workers, and terminated his employment on the basis of his race.

28.     Defendant's actions were intentional, willful, and taken in reckless disregard of Hilt' rights as protected by Title VII.

29.     Hilt has suffered damages as a result of Defendant's unlawful actions.

## COUNT II: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT – RETALIATION

30.     Hilt hereby incorporates paragraphs one (1) through twenty-nine (29) of his Complaint as if the same were set forth at length herein.

31.     Hilt engaged in a protected activity when he made internal complaints to Defendant.

32.     Hilt was retaliated against for engaging in said protected activity and was terminated from his employment.

33.     Defendant's actions were willful, intentional, and done with reckless disregard for Hilt' civil rights as protected by Title VII of the Civil Rights Act of 1964.

34.     Hilt has suffered and continues to suffer damages as a result of Defendant's unlawful actions.

## COUNT III: FMLA – INTERFERENCE

35.     Hilt hereby incorporates paragraphs one (1) through thirty-four (34) of his Complaint as if the same were set forth at length herein.

36.     Hilt utilized protected leave as he was entitled to under the FMLA. Defendant has written record of Hilt's leave of absence.

6

37. Defendant unlawfully discriminated against Hilt by using Hilt's use of FMLA leave against him and/or using his leave as a negative factor in assessing his performance and not restoring him to his original position and duties upon his return from leave.

38. Defendant repeatedly misrepresented Hilt's FMLA rights and imposed extra conditions by requiring Hilt to take Short-Term Disability during his FMLA leave as a pre-requisite to taking FMLA leave.

39. Defendant told Hilt that he would be terminated if he did not submit FMLA paperwork before their given deadline of February 25. When Hilt attempted to return to work before February 25, he was subsequently sent home and told that he was not supposed to be there. At that time, Hilt had not yet submitted his FMLA paperwork.

40. Defendant's unlawful actions were intentional, willful, and in reckless disregard of Hilt's rights as protected by the FMLA.

41. Hilt has suffered damages as a result of Defendant's unlawful actions.

## COUNT IV: FMLA – RETALIATION

42. Hilt hereby incorporates paragraphs one (1) through forty-one (41) of his Complaint as if the same were set forth at length herein.

43. Hilt exercised his need for protected FMLA leave, and Defendant retaliated against him by using his protected leave as a negative factor in Defendant's employment decisions, including discharging him.

44. Defendant unlawfully retaliated against Hilt for using his leave that qualified for protection under the FMLA.

45. Defendant's actions were intentional, willful, and in reckless disregard of Hilt's rights as protected by the FMLA.

7

46. Hilt has suffered damage as a result of Defendant's unlawful actions.

## VI. <u>REQUESTED RELIEF</u>

WHEREFORE, Plaintiff, Trent Hilt, respectfully requests that this court enter judgment in his favor and award him the following relief:

1. Reinstatement to his position with the Defendant with appropriate tenure, benefits, work schedule, and shift or an award of front pay in lieu thereof;

2. Award Plaintiff all back pay, lost wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

3. Award Plaintiff compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

4. Award Plaintiff liquidated damages due to the Defendant's willful violation of the FMLA;

5. Award Plaintiff compensatory damages, including but not limited to, emotional, mental, and physical distress;

6. Award Plaintiff punitive damages;

7. Award Plaintiff all costs and attorney's fees incurred as a result of bringing this action;

8. Award Plaintiff pre- and post-judgment interest on all sums recoverable; and

9. Award Plaintiff all other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

By: */s/ Rachel Ringer*  
Rachel Ringer, TBPR No. 041951  
Kyle F. Biesecker, TBPR No. 028872  
BIESECKER DUTKANYCH & MACER, LLC  
3200 West End Avenue, Suite 500

8

Nashville, Tennessee 37203
Telephone Number:   (615) 783.2171
Email Address: rringer@bdlegal.com
kfb@bdlegal.com

*Counsel for Plaintiff, Trent Hilt*


## **DEMAND FOR JURY TRIAL**

Plaintiff, Trent Hilt, by counsel, requests a trial by jury on all issues deemed so triable.

By:  */s/ Rachel Ringer*
Rachel Ringer, TBPR No. 041951
Kyle F. Biesecker, TBPR No. 028872
BIESECKER  DUTKANYCH  &  MACER, LLC
3200 West End Avenue, Suite 500
Nashville, Tennessee 37203
Telephone Number:   (615) 783.2171
Email Address: rringer@bdlegal.com
kfb@bdlegal.com

*Counsel for Plaintiff, Trent Hilt*

9